**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TYRON DEBARON WILLIAMS,
D.O.C. # T42965,**

      **Plaintiff,**

**vs.**                        **Case No.  4:23cv359-AW-MAF**

**RICKY DIXON,
and CARTER HICKMAN,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Service was directed of the pro se Plaintiff's second amended civil rights complaint ["complaint"], ECF No. 11, filed pursuant to 42 U.S.C. § 1983.  ECF No. 12.  Defendants Dixon and Hickman filed a motion to dismiss the complaint, ECF No. 32, raising multiple reasons for dismissal.  Plaintiff was advised of his obligation to respond to that motion, ECF No. 33, and his response was timely filed pursuant to the prison mailbox rule.  ECF No. 34.  The motion is ready for a ruling.

**Allegations of the Complaint, ECF No. 11**

Plaintiff identifies himself as a member of "Allah's Five Percent Nation of Gods and Earth" [a.k.a. "Five Percenters"].  ECF No. 11 at 5.  Plaintiff alleges that numerous pieces of literature which he ordered were confiscated or otherwise "rejected" by the Department of Corrections' Literature Review Committee.  *Id.* at 5-6.  He contends the literature is central to "connecting with his God-Centered-Culture."  *Id.* at 5.

In addition, Plaintiff complains that his request to have Five Percenters recognized as a religion so that services could be held at the institution was not granted and he was "assigned to the Muslim services." *Id.* at 7.  He contends that caused confusion and conflict because he is "not a Muslim!"  *Id.*

As to both issues, Plaintiff indicates that Five Percenters are deemed to be a security threat group [STG], and that status prevents his receipt of literature and services.  *Id.* at 8.   According to Plaintiff, the D.O.C. said that Five Percenters "will never be removed from the STG status" as the organization is "a Hate Group and have been labeled as such for the last 20 years."  *Id.* at 9.

Plaintiff also challenges the denial of his request to wear a religious item called a "crown." *Id.* at 9. Plaintiff said the crown "is a Kufi-like brimless cap that is closed-fitting with a tassel atop." *Id.* His request was first denied, but then approved. *Id.* at 9-10. However, after receiving the crown, it was confiscated. *Id.* at 10. Plaintiff also alleges that he has been unable to obtain a job change as a "Dorm Barber" and be transferred to the "Honor Dorm" because he is considered to have STG status as a Five Percenter." *Id.* at 11.

Plaintiff presents claims under the Religious Land Use and Institutionalized Persons Act, as well as claims under the First, Eighth, and Fourteenth Amendments. *Id.* at 13. As relief, Plaintiff seeks injunctive relief and a declaratory judgment. *Id.* at 14-15.

**Motion to Dismiss, ECF No. 32**

Defendants are the Secretary of the Florida Department of Corrections Ricky Dixon, and Head of Security Threat Group Unit Carter Hackman. ECF No. 32 at 2. Defendants argue that Plaintiff's claims are barred by the statute of limitations, that Plaintiff lacks standing, the complaint fails to state a claim, that Defendants are entitled to Eleventh

Amendment immunity, and Plaintiff's requests for declaratory and injunctive

relief are improper.  *Id.* at 1.

## Standard of Review

The issue on whether a complaint should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be

granted is whether the plaintiff has alleged enough plausible facts to

support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127

S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly,

550 U.S. at 570, 127 S. Ct. 1955).[1]  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Iqbal,

556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

S. Ct. at 1965); *see also* Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir.

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

2019).  "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility."  Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc.

v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in Twombly, 550 U.S. at 558).

**Analysis**

**1.    Statute of Limitations**

Defendants first argue that Plaintiff's claims are barred by Florida's

one-year statute of limitations stated in FLA. STAT. § 95.11(5)(g).[2]  ECF No.

32 at 6-7.  Defendants acknowledge that under Eleventh Circuit precedent,

courts "look to the most analogous state statute of limitations" because

§ 1983 does not have its own statute of limitations period.  ECF No. 32 at 6

(citing Everett v. Cobb Cnty. Sch. Dist., 138 F.3d 1407, 1409 (11th Cir.

1998).  Nevertheless, Defendants contend that because Plaintiff's

complaint does not allege any physical injury, § 95.11(5)(g) is the most

analogous statute of limitations and should be used here.  *Id.*  Furthermore,

Defendants argue that applying § 95.11(5)(g) would bar Plaintiff's

complaint because all events alleged occurred between March 2019 and

---

[2] The statute states that "[e]xcept for actions described in subsection (8), an action brought by or on behalf of a prisoner, as defined in s. 57.085, relating to the conditions of the prisoner's confinement" must be brought within one year.  FLA. STAT. § 95.11(5)(g).  The referenced subsection (8) is not applicable as it set a shorter statute of limitations for court actions "challenging prisoner disciplinary proceedings conducted by the Department of Corrections . . . ." FLA. STAT. § 95.11(8).

November 2022, which is more than one year before Plaintiff filed this case on August 14, 2023.  *Id.* at 7.

Defendants' argument is based on the decision of <u>Green v. Cottrell</u>, 204 So. 3d 22 (Fla. 2016), in which the Florida Supreme Court determined what was meant by § 91.11(5)(g)'s use of the phrase: "conditions of the prisoner's confinement."  <u>Green</u>, 204 So. 3d at 28.  The court held that it did not "encompass the situation where a prisoner alleges that he suffered actual physical injury due to the negligent or wrongful act or omission of an employee of a government entity."  204 So. 3d at 28.  In such a case, the four-year limitations period of Florida's general tort statute - § 768.28(14) - would apply.  <u>Green</u>, 204 So. 3d at 29; *see also* <u>Brazill v. Jones</u>, No. 5:21-CV-99-TKW-MJF, 2023 WL 2872449, at *5 (N.D. Fla. Feb. 3, 2023), report and recommendation adopted, No. 5:21-CV-99-TKW-MJF, 2023 WL 2870706 (N.D. Fla. Apr. 10, 2023).  Even so, the Court explained in the beginning of its analysis that the "first issue presented [in that] case [was] which statute of limitations govern[ed] the *state law claims* raised in Green's complaint."  204 So. 3d at 26 (emphasis added).  There is no indication that the Florida Supreme Court was deciding which statute of limitations was applicable for a prisoner's federal § 1983 claims, and as

Plaintiff points out - his complaint asserts RLUIPA claims and constitutional deprivations under 42 U.S.C. § 1983.  *See* ECF No. 34 at 2.

Moreover, Defendants have silently overlooked the fact that this argument has been rejected by federal courts in Florida.  A prior case in the Northern District of Florida concluded that Defendants' argument was "contrary to United States Supreme Court precedent and binding Circuit precedent."  Brazill, 2023 WL 2872449, at *6 (citing to Wilson v. Garcia, 471 U.S. 261 (1985), and Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999) in rejecting the statute of limitations argument and finding that Brazill's § 1983 claims were timely filed).  Other courts have applied § 95.11(5)(g)'s "one-year limitations period" to a prisoner's state law claims, but did not apply it when considering federal § 1983 claims.  Morrill v. Holmes Cnty. Jail, No. 5:15-CV-324-WTH-GRJ, 2018 WL 7082149, at *17 (N.D. Fla. Jan. 30, 2018), report and recommendation adopted, No. 5:15-cv-324-MCR-GRJ, 2019 WL 280082 (N.D. Fla. Jan. 22, 2019); Johnson v. Cert, No. 3:15-CV-1487-J-39JBT, 2017 WL 1365562, at *3 (M.D. Fla. Apr. 14, 2017) (holding that Green does not mandate that this Court apply the one-year limitation period to Plaintiff's federal claims").  Two other decisions have relied on Green to hold that § 95.11(5)(g) does not apply if

the prisoner alleged suffering physical injury and, instead, "applying the appropriate statute of limitations for negligence under § 768.28(14)." Morrill v. Holmes Cnty., No. 5:15-CV-324-WTH-GRJ, 2017 WL 6330630, at *6 (N.D. Fla. Mar. 23, 2017), report and recommendation adopted *sub nom.* Morrill v. Drs. Mem'l Hosp., No. 515cv324-WTH-GRJ, 2017 WL 6329950 (N.D. Fla. Dec. 11, 2017); *see also* Frasca v. Fla. Dep't of Corr., No. 3:16-CV-1468-J-32MCR, 2018 WL 3642275, at *5 (M.D. Fla. Aug. 1, 2018) (considering "the one-year statute of limitations period in section 95.11(5)(g)" only as to plaintiff's state law claims and relying on Green v. Cottrell to deny defendants' motion to dismiss because plaintiff "suffered a physical injury due to the negligent or otherwise wrongful acts or omissions of the Defendants").

The precedent which this Court must follow is from the Eleventh Circuit Court of Appeals and the United States Supreme Court. In Owens v. Okure, 488 U.S. 235, 249-50 (1989), the Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Likewise, the Eleventh Circuit has explained that "[c]laims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of

limitations period governing personal injury actions in the state where the action is brought." Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir. 2014). Furthermore, in a case decided before the Florida Supreme Court's decision in Green, the Eleventh Circuit applied the one-year limitation period of § 95.11(5)(g) only to the prisoner's state law claims of assault, battery, and negligence. Rogers v. Judd, 389 F. App'x 983, 988 (11th Cir. 2010). Therefore, because Plaintiff has not alleged any state law claims, the motion to dismiss Plaintiff's claims as untimely pursuant to FLA. STAT. § 95.11(5)(g) should be rejected.[3]

## 2.    First Amendment & RLUIPA Claims

Defendants next argue that Plaintiff has failed to allege a sufficient "retaliation claim" under the First Amendment. ECF No. 32 at 7-11. That argument should be summarily rejected because Plaintiff's complaint does not assert a retaliation claim. Rather, Plaintiff's complaint alleges a First Amendment claim because he is unable to enjoy "freedom of religion" and Defendants have interfered with his ability to receive "religious literature

---

[3] Plaintiff "concedes" that certain claims which occurred prior to August 2019 "may be barred by the statute of limitations." ECF No. 34 at 2-3. Defendants did not, however, raise a more explicit statute of limitations challenge besides § 95.11(5)(g). See ECF No. 32. Because this is an affirmative defense which has not been properly presented, no action need be taken on Plaintiff's concession.

and materials . . . ."  ECF No. 11 at 13.  He presents a similar claim under

the Religious Land Use and Institutionalized Persons Act ["RLUIPA"],

alleging Defendants have improperly denied his religious materials and the

inability "to participate in weekly study classes."  *Id.*  Thus, the motion to

dismiss a First Amendment retaliation claim should be denied.

Defendants then contend that Plaintiff has failed to present a viable

Free Exercise Claim under the First Amendment.  ECF No. 32 at 11-13.

They argue that Plaintiff has "failed to allege facts that demonstrate a

substantial burden on Plaintiff's exercise of his religious beliefs."  *Id.* at 12.

In making that argument, Defendants rely on Robbins v. Robertson, 782

Fed. App'x 794, 801 (11th Cir. 2019), for the proposition that Plaintiff must

show "a 'substantial burden' on a sincerely held religious belief."  *Id.* at 11.

That argument combines two different standards for evaluating the First

Amendment claim and the RLUIPA claim, simultaneously arguing that both

claims should be dismissed.  *Id.* at 11-13.

In Robbins v Robertson, the plaintiff "filed a pro se 42 U.S.C. § 1983

complaint . . . alleging that [the defendants] forced him to choose between

violating his religious dietary restrictions or suffering malnutrition."

Robbins, 782 F. App'x at 796.  Plaintiff claimed the defendants "violated his

rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, and the Eighth Amendment."  782 F. App'x at 796.  The court in <u>Robbins</u> explained that to "state a claim under the First Amendment's Free Exercise Clause, a plaintiff must plead facts showing a 'substantial burden' on a sincerely held religious belief."  *Id.* at 801.  The court sought to explain "substantial burden" by citing to language from <u>Midrash Sephardi, Inc. v. Town of Surfside</u>, 366 F.3d 1214, 1227 (11th Cir. 2004), and <u>Holt v. Hobbs</u>, 574 U.S. 352, 135 S. Ct. 853, 862, 190 L.Ed.2d 747 (2015).  <u>Robbins</u>, 782 F. App'x at 801-802.  The problem is that the claims in both <u>Holt</u> and <u>Midrash Sephardi</u> were based on RLUIPA; they were not First Amendment "Free Exercise" claims.

Prisoners do not lose their First Amendment right to the free exercise of religious beliefs because of their incarceration.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); <u>O'Lone v. Est. of Shabazz</u>, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987).  Even so, a prisoner may lawfully have some limitations and restrictions imposed due to "valid penological objections" such as prison security.  <u>O'Lone</u>, 482 U.S. at 348, 107 S. Ct. at 2404 (citations omitted).  When prison rules or regulations are alleged to infringe upon a prisoner's

constitutional rights, they "are judged under a 'reasonableness' test."  482

U.S. at 349, 107 S. Ct. at 2404 (citation omitted).  Thus, a prison regulation

that infringes on a prisoner's First Amendment rights is "an actionable

constitutional violation only if the regulation is unreasonable."  Hakim v.

Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000) (quoted in Johnson v. Brown,

581 F. App'x 777, 780 (11th Cir. 2014)).  To evaluate "a prison regulation's

reasonableness," courts use the four factor analysis from Turner v. Safley,

482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).[4]  Johnson, 581 F.

App'x at 780; *see also* Rodriguez v. Burnside, 38 F.4th 1324, 1330 (11th

Cir. 2022), *cert. denied,* 143 S. Ct. 1780 (2023) (stating "a prison regulation

burdening an inmate's exercise of constitutional rights must be 'reasonably

related to legitimate penological interests'") (citing Turner, 482 U.S. at 89,

107 S. Ct. 2254).

---

[4] The four factors are: (1) "there must be a 'valid, rational connection' between
the prison regulation and the legitimate governmental interest put forward to justify it;"
(2) "whether there are alternative means of exercising the right that remain open to
prison inmates;" (3) "the impact accommodation of the asserted constitutional right will
have on guards and other inmates, and on the allocation of prison resources generally;"
and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison
regulation."  Turner v. Safley, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 2262, 96 L. Ed. 2d
64 (1987).

Importantly, prior to the passage of RLUIPA, analysis of First Amendment claims focused on the reasonableness of the infringement in light of the Turner factors.  Courts did not separately scrutinize the religious belief at issue but focused on the regulation.  In the wake of RLUIPA case law, the standards have, at times, been combined. *See* Robbins, 782 F. App'x at 801 ("To state a claim under the First Amendment's Free Exercise Clause, a plaintiff must plead facts showing a 'substantial burden' on a sincerely held religious belief").  It often will not matter because if a RLUIPA claim fails, the First Amendment claim likely does as well.  *See* Muhammad v. Jones, No. 22-12563, 2023 WL 5499969, at *3 (11th Cir. Aug. 25, 2023) (noting that "'[w]hile the First Amendment requires only that prison restrictions be reasonably related to legitimate penological interests,' Davila v. Gladden, 777 F.3d 1198, 1212 (11th Cir. 2015), '[t]he RLUIPA provides greater religious protection than the First Amendment,' Dorman v. Aronofsky, 36 F.4th 1306, 1313 (11th Cir. 2022)").

In a recent case, the Eleventh Circuit first considered the inmate's First Amendment claim under the Turner analysis, and then separately evaluated the RLUIPA claim.  Dorman, 36 F.4th at 1313 (noting "RLUIPA provides greater religious protection than the First Amendment"); *see also*

Holt, 574 U.S. at 358, 135 S. Ct. at 860 (discussing the evolution of the

RLUIPA and noting RLUIPA provides far more "expansive protection for

religious liberty" than the First Amendment).  However, the reality is this:

"[i]f a claim fails under the RLUIPA—which embeds a heightened standard

for government restrictions of the free exercise of religion—it necessarily

fails under the First Amendment."  Dorman, 36 F.4th at 1313.  Even so, the

standard of review is different.[5]

Here, Plaintiff alleged that he was denied religious literature and

religious materials, the opportunity to have services, and celebrate

"National Honor Days."  ECF No. 11.  Defendants make no arguments as

to reasonableness of the restrictions imposed and provide no analysis of

the Turner factors.  Accordingly, Defendants have not provided this Court

with a basis to evaluate whether their rules and decisions are reasonable,

and thus, valid.  See Johnson, 581 F. App'x at 781 (unable to "evaluate

---

[5] While affirming the standard of review for First Amendment claims, the Supreme Court noted in passing that there was "no question that [the prisoners'] sincerely held religious beliefs compelled attendance at Jumu'ah."  O'Lone v. Est. of Shabazz, 482 U.S. 342, 345, 107 S. Ct. 2400, 2402, 96 L. Ed. 2d 282 (1987) (holding that the challenged prison regulations "did not violate respondents' rights under the Free Exercise Clause of the First Amendment to the United States Constitution").  The Court did not, however, direct courts to specifically consider the sincerity of a prisoner's religious beliefs of the prisoners.

whether the alleged restrictions on Johnson's religious practice were reasonable in light of the four <u>Turner</u> factors" and finding the plaintiff presented a plausible Free Exercise claim) (citing to <u>Saleem v. Evans</u>, 866 F.2d 1313, 1316–17 (11th Cir. 1989) for the proposition "that ordinarily a prisoner's First Amendment Free Exercise claim should not be dismissed for failure to state a claim unless the complaint's allegations show the state has a legitimate justification for regulating a prisoner's religious practices or the claim is 'so facially idiosyncratic' that no state justification is required"); <u>Hakim</u>, 223 F.3d at 1249 (concluding "the district court did not err in determining the DOC's policy was unreasonable under the *Turner* standard").  The Court concludes that Plaintiff's allegations state a viable First Amendment claim, and recommends denial of the motion to dismiss as to that claim.  *See* <u>Cruz v. Beto</u>, 405 U.S. 319, 322, 92 S. Ct. 1079, 1082, 31 L. Ed. 2d 263 (1972) (accepting the allegations as true as required when ruling on a motion to dismiss and finding the prisoner's allegations that he was "denied permission to purchase certain religious publications and denied other privileges enjoyed by other prisoners" were sufficient to state a claim).

Defendants also argue that Plaintiff "failed to allege facts that demonstrate a substantial burden on Plaintiff's exercise of his religious beliefs."  ECF No. 32 at 12.  Determining whether a prisoner suffered a "substantial burden" in his religious practice is a proper consideration after the passage of the Religious Freedom Restoration Act of 1993 (RFRA)[6] and RLUIPA.  Indeed the statutory language of those Acts forbids the government from imposing a substantial burden on a religious practice.  Therefore, it is a proper valid consideration for a RLUIPA claim.[7]

---

[6] RFRA provides in relevant part: "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—1) is in furtherance of a compelling governmental interest and 2) is the least restrictive means of furthering that compelling government interest."  Cheffer, 55 F.3d at 1522 (quoting 42 U.S.C. § 2000bb–1).  However, after the Supreme Court decided City of Boerne v. Flores, 521 U.S. 507, 514, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997), holding that Congress had overstepped its Section 5 authority in enacting RFRA, "Congress passed the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc et seq."  Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 695, 134 S. Ct. 2751, 2761, 189 L. Ed. 2d 675 (2014).  RLUIPA and RFRA were "designed to provide very broad protection for religious liberty," going beyond the prior limits of First Amendment jurisprudence.  Burwell, 573 U.S. at 706, 134 S. Ct. at 2767.

[7] RLUIPA provides in pertinent part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—  (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

"To establish a prima facie case under RLUIPA, the plaintiff must demonstrate that his engagement in religious exercise was substantially burdened by the law, regulation, or practice he challenges." Smith v. Owens, 848 F.3d 975, 979 (11th Cir. 2017)) (citation omitted).  The Eleventh Circuit has "held that an individual's exercise of religion is 'substantially burdened' if a regulation completely prevents the individual from engaging in religiously mandated activity . . . ." Midrash Sephardi, 366 F.3d at 1227 (citing to Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995)).  Plaintiff's allegations, construed liberally, demonstrate he has been denied all religious opportunity because the DOC does not recognize "Five Percenters" as a religious faith.  Instead, DOC considers "Five Percenters" to be a "Hate Group."  ECF No. 11 at 9.  Plaintiff receives no literature, no materials pertaining to his faith, and has no opportunities to meet for services or celebrate Holy Days.  His response to the motion to dismiss correctly argues that those are substantial burdens.  ECF No. 34 at 10.  At this stage of the litigation, Plaintiff has alleged enough to proceed with the RLUIPA claim.

To the degree Defendants argue that "Plaintiff was not forced to choose between engaging in his religious practice or face a serious

penalty," *see* ECF No. 32 at 12, Defendants argument should be rejected.

Plaintiff's complaint makes clear that there was no choice for him to make

because Defendants denied his receipt of the materials.  Plaintiff could not

choose to keep his religious literature or face disciplinary action because

he was never given the literature; it was rejected by the Literature

Committee.

Further, Defendants argue that "Plaintiff continued to practice his

religious beliefs," *see* ECF No. 32 at 12, but that statement lacks a

contextual basis in Plaintiff's complaint.  There is no indication within

Plaintiff's complaint that he was provided other religious literature

pertaining to his faith, allowed to keep some religious items, or gather with

other members of his faith for services.  Instead, Plaintiff specifically

alleged being denied all materials that he requested concerning "Five

Percenters" because DOC deems it to be a STG (Security Threat Group).

*See* ECF No. 11 at 7-9.  He has been denied participation in services as

well as holy day observances.  *Id.* at 10; *see also* ECF No. 34 at 9.[8]

Finally, Defendants argue that "Plaintiff has failed to allege facts that

demonstrate a sincere religious belief that was burdened."  ECF No. 32 at

---

[8] Plaintiff's response to the motion to dismiss omits page 8.  ECF No. 34.

Case No. 4:23cv359-AW-MAF

12.  That argument should also be rejected.  Plaintiff alleged he is "a

certified member of 'Allah's Five Percent Nation of Gods and Earths.'"  ECF

No. 11 at 5.  He said the denial of the "literature is central" to his

"connecting with his God-centered-culture while incarcerated."  *Id.*  Plaintiff

has also alleged continued efforts to obtain religious items and participate

in services over several years (2019 - 2021), and Defendants have

provided no basis to doubt the sincerity of Plaintiff's faith.

The Sixth Circuit has found that "RLUIPA's sincerity prong is not a

difficult hurdle for prisoners."  Ackerman v. Washington, 16 F.4th 170, 180

(6th Cir. 2021) (noting "the sincerity requirement is just a 'credibility

assessment' that asks if a prisoner's religious belief is honest").  "The

sincerity prong just requires courts 'to determine whether the line drawn' by

the plaintiff between conduct consistent and inconsistent with her or his

religious beliefs 'reflects an honest conviction.'"  New Doe Child #1 v.

Cong. of U.S., 891 F.3d 578, 586 (6th Cir. 2018) (quoting Burwell, 573 U.S.

at 725, 134 S.Ct. 2751) (quoted in Ackerman, 16 F.4th at 180).  Here,

Defendants' argument is unsupported and should be rejected.

**3.    Fourteenth Amendment Claim**

Defendants argue that Plaintiff has alleged a due process violation

under the Fourteenth Amendment which is insufficient.  ECF No. 32 at 13-

14.  Again, Defendants have misread Plaintiff's complaint.  Plaintiff has not

alleged or asserted a due process claim.  Instead, Plaintiff alleged an equal

protection claim under the Fourteenth Amendment.  ECF No. 11 at 13.

Therefore, the motion to dismiss a Fourteenth Amendment due process

claim should be denied.

**4.    Eighth Amendment Claim**

Defendants also seek to dismiss Plaintiff's Eighth Amendment claim.

ECF No. 32 at 14.  In the statement of claims section of the amended

complaint, Plaintiff asserted an Eighth Amendment claim for "deliberate

indifference."  ECF No. 11 at 13.  It appears that the basis for that claim is

that Defendants were deliberately indifferent "to Plaintiff's right to free

exercise of religion."  *Id.* at 14.

When a prisoner alleges that prison officials were deliberately

indifferent to the conditions of his confinement, the prisoner must make an

"objective" showing that "the condition he complains of is sufficiently

serious to violate the Eighth Amendment."  Hudson v. McMillian, 503 U.S.

1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "The challenged condition must be 'extreme.'"  Hudson, 503 U.S. at 9, 112 S. Ct. at 1000 (quoted in Chandler, 379 F.3d at 1289).  Here, however, Plaintiff has not demonstrated that the deprivation he complains of is "extreme."  The inability to practice one's religion is significant, but it is not extreme.  There is no risk of harm to Plaintiff, and no intolerable risk to his health or safety.  Accordingly the motion to dismiss the Eighth Amendment claim should be granted.

**5.    Standing**

Defendant Hickman contends that Plaintiff lacks standing to bring a RLUIPA claim against him.  ECF No. 32 at 16.  Essentially, Defendant argues that Plaintiff fails to demonstrate an injury traceable to Defendant Hickman.  *Id.*

Plaintiff's complaint alleged that Defendant Hickman is the "Head" of the Security Threat Group Unit.  ECF No. 11 at 9.  Defendant Hickman is the official who informed Plaintiff's father that "Five Percenters [would] never be removed from the STG status" and was deemed to be "a Hate Group."  *Id.*  Plaintiff's complaint does not allege, however, that Defendant

Hickman is the official responsible for making such determinations or that

he makes policy concerning whether a group loses religious status if

deemed to be a STG.  Plaintiff's allegations state only that Defendant

Hickman conveyed information, not that he created policy.  Therefore,

Plaintiff's claims against Defendant Hickman should be dismissed.

## 6.   Eleventh Amendment Immunity

Defendants make an unsupported argument that Defendants have

"Eleventh Amendment Immunity such that Plaintiff's claims should be

dismissed."  ECF No. 32 at 17.  It is true that both Defendants were sued in

their official capacities only.  ECF No. 11 at 2-3.  However, Plaintiff's

requested relief is for injunctive and declaratory relief; Plaintiff does not sue

the Defendants for monetary damages.  *Id.* at 14-15.

Absent limited exceptions, the State of Florida and its agencies are

immune from suit in this Court by force of the Eleventh Amendment.  Carr

v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990); *see also*

Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107 (reiterating that "absent

waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court.").

That "bar remains in effect when State officials are sued for damages in

their official capacity."  Kentucky, 473 U.S. at 169, 105 S. Ct. at 3107; *see also* Odebrecht Const., Inc. v. Secretary, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (same).

The first two exceptions to Eleventh Amendment immunity are through waivers of sovereign immunity.  *See* Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985); Gamble v. Florida Dep't of Health and Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986).  Waiver may be either by the State or Congress may override a state's immunity pursuant to its power under § 5 of the Fourteenth Amendment.  Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 119 S. Ct. 2199, 2205-06, 144 L. Ed. 2d 575 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55, 116 S. Ct. 1114, 1124, 134 L. Ed. 2d 252 (1996) (concluding "that the type of relief sought is irrelevant to whether Congress has power to abrogate States' immunity.").  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011).  Congress did not abrogate a state's immunity when enacting § 1983, Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L. Ed.

2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974), nor has Florida waived its immunity and consented to suit in federal court under § 1983.  Gamble, 779 F.2d at 1520.

A third exception is through Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908).  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L. Ed. 2d 438 (1997) (reaffirming that prospective relief may be sought against a state official in federal court). Sandoval v. Hagan, 197 F.3d 484, 492 (11th Cir. 1999) (citing Summit Med. Assoc. v. Pryor, 180 F.3d 1326, 1336-38 (11th Cir. 1999).  The Ex parte Young exception holds that a state official who enforces state law which conflicts with the superior authority of the federal Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."  Stewart, 563 U.S. at 254, 131 S. Ct. at 1638.  Accordingly, determining whether this exception applies requires answering a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  563 U.S. at 255, 131 S. Ct. at 1639 (citations omitted).

Here, Plaintiff included a request for prospective injunctive relief, seeking to prevent the Department of Corrections from confiscating his religious materials in the future and to remove the STG status for "Five Percenters."  ECF No. 11 at 14-15.  Plaintiff's complaint makes clear that he is seeking to change the future course of events and he does not base his complaint solely on events from the past.  Plaintiff's complaint falls within the <u>Ex parte Young</u> exception and is not barred.  Defendants' motion to dismiss on the basis of Eleventh Amendment immunity should be denied.

**7.    Declaratory and Injunctive Relief**

Defendants seek to dismiss Plaintiff's request for declaratory relief on the basis that Plaintiff does "not allege any facts that demonstrate that the complained of conduct would continue."  ECF No. 32 at 20.  Defendants argue that Plaintiff has not presented an ongoing "actual controversy" and this case is based on past conduct.  *Id.* at 19-20.  That argument should be rejected.  Plaintiff's complaint makes clear that the DOC has a continuing policy that will not be changed.  He alleged that Defendant Hickman said "Five Percenters [would] never be removed from the STG status."

Accordingly, Plaintiff has a continuing controversy with the DOC because he is prevented from receiving his religious materials and literature.

Defendants also argue that Plaintiff's request for injunctive relief is improper.  ECF No. 32 at 20-21.  That argument should be rejected as well. Without injunctive relief, Plaintiff will not be able to receive religious literature, wear religious items, or participate in services and holy days.  His alleged injury is not speculative; it is imminent and on-going.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 32, be **GRANTED in part and DENIED in part**.  Plaintiff's Eighth Amendment claim should be dismissed, and Defendant Hickman should be dismissed.  Otherwise, the motion to dismiss should be **DENIED** and this case **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on June 10, 2024.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 4:23cv359-AW-MAF

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**